May it please the court, your honors, Casey Arvind is here for Mr. Barry, the petitioner in this matter. This afternoon provides this court an opportunity to correct an injustice that began about eight years ago when Mr. Barry was in trial and... The problem is that you, after you took over the case, didn't raise equitable tolling to the Washington court and instead you went and you tried to get the direct appeal reopened and then when you filed your post-conviction proceedings, you complained about the abandonment which was quite proper to do, but again you didn't ask for equitable tolling and it was on that basis that the Washington Court of Appeals found that you were out of time and the Washington Supreme Court agreed. So it seems like on top of the abandonment we have a real problem that you created and it may make it impossible for us to get at this issue. Sure, and you know, no lawyer's perfect, your honor, and I certainly care deeply about Mr. Barry and the case. The net result, and what you did, it seems to me, is not abandonment, but it's probably an effective assistance of counsel. I don't know that it's going to get him anywhere and it's very Understood, your honor, and you know, what I can tell the court is just that it is not immediately obvious when you take on a case like this what the best strategic choice is. You know, if a family walks in and says... The best strategic choice if you're trying to avoid a already run statute of limitations is to explain why it doesn't apply, i.e. why it should be equitable tolling. You didn't do it. Right. I guess, you know, what I would say... Well, the question is what can we do about it now? Well, I think what the court can do is say, you know, the statute of limitations had run when I got the case. So there was no statutory statute. And so the choice of approach to obtain some sort of relief was not immediately clear. And we went to the court. We went to the court in the state where the abandonment, the abandoning attorney was practicing and sought relief under the court rules there and asked for, you know, relief. Asked initially to excuse or to extend the date of the mandate. The purpose of that was to then be able to file a cert petition with the U.S. Supreme Court. That's why you did that? No. I don't believe that would have been the appropriate strategy. In fact, you know, Mr. Harrison kind of set all of this on a misleading course from at least my perspective with his letter where he said, you know, the next step is we're going to take this all the way to the U.S. Supreme Court. The appropriate approach, in my perspective, would have been to first go back as a, in Washington, we call a personal restraint petition, which is a form of collateral attack once the appellate process is run out and argue two things. One, ineffective assistance of appellate counsel in improperly arguing this courtroom demeanor issue. And not raising it under the 14th Amendment standard, which is, of course, applicable to states versus the 5th and 6th Amendment approach, which is what appellate counsel chose. But more importantly, but to expand the record and bring in declarations from witnesses in the courtroom who observed not only the admonishments, but the effect that it had on Mr. Berry and also perhaps even declarations from jurors that said that his whole demeanor. Let's suppose that there was some way to have equitable tolling from the point from July 2017. I think that's the date on June 2017, which is the latest possible date on which he was aware of Mr. Harrison's abandonment. The government argues it was a year earlier, but let's assume it was June 2017, right? At that point, you weren't exactly a speed demon either in terms of filing things. Sure. Well, you know, again, Your Honor, I understand. There's always, it's not, it's not as if. The total number of months in which you didn't file anything was, I don't know, somewhere over a year or so, was it? It took about nine months. The number of months from which nothing was pending, starting from June 2017 to December 2018 is how much? Eight months, give or take. So what I would, what I would say is that, I mean, you know, obviously it's hard to not here to testify. But what I can tell the court is that a tremendous amount of effort was made initially to get the file from Mr. Berry and then later to talk with the other attorneys in Washington state who are now representing all of these ex-Mitch Harrison clients. Did any of them get the relief that you asked for? Not really. In fact, it was generally agreed upon by a number of attorneys in Seattle that the proper approach was to recall the mandate, which is what we sought to do. I don't believe so. No, I don't believe so, Your Honor. And so it's frustrating. And so then it's, well, we got to change gears here and put together an approach. Now, you know, I'm, I'm an attorney. I was a young attorney at the time. I was an associate. Gotten older fast? Wasn't my only case. What's that? You've gotten older fast as a result of all this? Oh, without question. You know, and we all have that case, right? And so all I can say is, again, I had never seen any conduct like what I saw. And frankly, it was somewhat unbelievable initially. And it was a couple of years of representing Mr. Berry before I actually could meet him outside of prison. And so I'm going off the word of his family and over spotty phone calls from the prison as I try to recreate what happened here. The approach that we took was taken. And whether, you know, whether attorneys made a number of mistakes, which I think undoubtedly we have, and whether that should fall on Mr. Berry really raises this issue of what. The technical question seems to me is that the Washington courts having said that, suggested they might have done the equitable tolling, but you didn't raise it. We now equitably told for the time that you had pending proceedings in which you, for the same time period, in which they say that the reason you didn't get the equitable tolling was you didn't ask them for it. And you didn't have to brief that question, nor has anybody. But it seems to me to be both an oddity and a disturbing aspect of this case, that it isn't simply that this went by the boards, it's that, that if you would raise the equitable tolling and they'd said no, and then you'd shown up and asked us to equitably toll for that period, that would have been one thing, but you didn't raise it. And they suggested that you might have been able to. Right. I guess the way I would describe equitable tolling is it's typically not something that you, it's not like statutory tolling, right? It's not like a calendar, a place on a calendar you can mark off that says this is the commencement date, and this is the date that it needs to be filed. And, you know, the Supreme Court in, I believe it was in, I think it was McKinnon talked about procedural default. And that's a different term. Recalling a mandate's a different strategy. So, again, without knowing exactly what to do. What I'm talking about is after the recalling the mandate issue. After. Where the problem arose. Right. And I guess the feeling was that we needed to exhaust the state remedies and go back to the state. Including having some way to have them listen to your argument because it was otherwise out of time. So, I mean, I mean, maybe I'm just too steeped in federal statutory limitations in the habeas context. But we sure got a lot of equitable tolling suggestions. It didn't seem arcane. Right. Right. Well, you know, but I'm asking a technical question. I mean, are we now precluded even from considering equitable tolling because the state, that wasn't exhaustive and it couldn't be. No, I don't believe so. I don't believe under the law that this court couldn't find that equitable tolling is required here. Given the circumstances, given the fact that the district court did, you know, cite to Valenzuela. And that was actually a case that the district court judge had said. What was your basis for trying to recall the mandate? What was the argument made? It was it was it was similar. It was similar conduct. It was just, again, that in some of this was some of the time delay was waiting to see what the Supreme Court would do in terms of Mr. Harrison's discipline. And so it was the argument was the Supreme Court has affirmed that this lawyer is to be. I think he resigned in lieu of disbarment. And so now we've got a clear record of a person who not only abandoned Mr. Berry, but also abandoned at least nine other clients. And so based on that principles of justice, there's a number of, you know, to prevent a substantial injustice. These are these are terms that are found in different cases to provide relief. And so that was the approach. And admittedly, to some degree, we were asking for for somebody in a judge essentially to say, look, we have to step in here and correct this because this isn't a fact pattern that happens every day. But somebody needs to do something and and correct this. So that was that was the approach. And I believe I was over time. OK, you are slightly over time, but we'll give you a minute or two. Thank you. Well, thank you. Yes, Mr. Sampson. And please support John Sampson, assistant attorney general representing the respondent, Appleby. Mr. Berry is not entitled to equitable tolling in this case from June of 2017 to December. Because no extraordinary circumstance stood in the way of the filing of a petition during that period of time. Where he had hired a new attorney in September of 2016 and then waited. I mean, no one's well is non-presidential, but it did address, except for this feature of the fact that the equitable tolling was that was affirmatively not raised in the state court. As far as I know, I mean, the facts are very limited and well as they should be in a memorandum disposition. But it basically says that you should have the time to exhaust because otherwise you would get to state court. You'd have an unexhausted petition. Right. So so assuming that let's just assume that for a moment that he had he should have some time to exhaust because he wasn't able to, because of what the abandoned, you know, egregiously abandoned attorney did. Then what then would equitable tolling be appropriate, i.e. was still too long a time or was wrong petition filed or what? Yes, your honor. For a couple couple points is that even if this court were to grant equitable tolling from the time he hired this new council in September 2016 to the time he filed the motion to recall the mandate in June of 2000, 2017, which is essentially what the district court was doing, was giving him that time period. He still then waited over a year and a half to file a federal petition. And he's not entitled to doing nothing during that period. He was, in fact, for some of that he had pending state proceeding. He did for some, but they were not properly filed, so they did not toll statutorily, statutorily. But Valenzuela assumes that you can do it equitably anyway. Your honor, I have two issues about Valenzuela, aside from the fact that it is unpublished, which is a big deal, and I don't follow things. I just want to know whether it's reasoning. He's worth something. And I would say that it was issued before this court decided the case of Smith versus Davis, which Mr. Barbins, my friend on the other side, cites to. And in Smith versus Davis, the court said that the standard is not whether or not he could go to state court to exhaust claims. But there had to be an extraordinary circumstance still existing that caused his failure to file a timely petition. And that did not exist in this case because under Ryans versus Weber and Pace versus de Guglielmo, the petitioner could file a placeholder or protective petition in federal court, ask the district court to hold, to stay that and hold it in advance, and then proceed in state court. And, in fact, that has occurred in numerous cases that I have. It's not in the record, but I have numerous cases, both pro se and represented where the petitioner does that. Well, I didn't remember Davis. I mean, the main point of Davis is that you need to have diligence both before and after the time period. And you don't do a stop clock method. You seem to be citing it for something else. Where is that? Your Honor, there's also the statement that that has to be. And they were taking this from the Supreme Court's standard in Holland. Well, there has to be an extraordinary circumstance, but it doesn't say anything about whether trying to exhaust after you haven't been able to exhaust because of abandonment by your lawyer is an extraordinary circumstance. Your Honor, it doesn't say that having to exhaust is an extraordinary circumstance, but I would say it isn't either under the circumstances in which you are prevented from doing it because your lawyer abandoned. Well, Your Honor, that's two different things, because the abandonment was over in September 2016 when he hired his new attorney. And then the fact that you have to exhaust state remedies, I think, is recognized in the Pace decision that that's not an extraordinary circumstance. Pace is not. Oh, I see. The other part of Pace. The other part of Pace is when they talk about equitable tolling and they talk about the standard for that and also in Holland versus and I'm blinking on who Holland is versus. But in the Holland case, the Supreme Court said there has to be an extraordinary circumstance that prevented you from filing a federal petition on time. And then this court Smith versus Davis said that creates a causation requirement. So the extraordinary circumstance, it's not enough that it existed at one point in time. It has to be what prevented you from filing a timely petition. And in that case, the petitioner waited over 10 months to file his petition after that extraordinary circumstance ceased to exist. And this court held on Bach that that was not sufficient diligence and did not show the existence of an extraordinary circumstance. So it's to allow for equitable tolling. And I would submit the same thing occurs here, because first, if you go from September 2016, when when Mr. Berry hired his new attorney, there was a delay of nine months before he filed anything. Then he files a motion to recall the mandate that is resolved after a couple months. Then he waits for more months to file his personal restraint petition. So even if the court worded were to do, for instance, the stop clock method that was rejected in Smith. But to say that the statute of limitations told until he hired the new attorney in September 2016. Still more than a year expired, even including the time that he was proceeding in state court with the PRP and with the motion to recall the mandate. Still more than a year expired if you count all the time together, because nine months before the motion to recall the mandate, four months after the court denied that until he filed his PRP. And then three months, a little bit more than three months from the time the state court denied the PRP until he filed his federal petition. So over a year, even if you grant him time for when he was trying to exhaust. He still spent more than a year before he filed his federal petition. One of your questions, your honor, was whether the issue could even be decided because he didn't raise it in state court. It's the state's position that that's a separate issue. Equitable tolling of the statute of limitations. The federal issue doesn't have to be exhausted. But then the other question was whether current counsel's strategic decisions to file in state court rather than a federal court can be a basis for equitable tolling. And it cannot be under this court and the Supreme Court's decision. He is acting as the agent of Mr. Barry. So any decision he makes is attributable to Mr. Barry. So the decision and it was their decision to go to state court twice before filing a federal petition. That is attributable to Mr. Barry. But what if they had, in fact, filed when you said they could have filed? I mean, maybe under rhymes, they could have gotten the district court to state a case for for exhaustion. But maybe they wouldn't have. Right. In other words, it's not a foregone conclusion that that's going to happen. Well, you're fairly stringent requirements for doing that. Your Honor, the standard under rhymes is whether they've shown good cause to stay the federal petition as they attempt to exhaust their state remedies. But in my book, what would be the abandonment? That's what you would think. Good cause would be the abandonment. It would be the that they are trying to exact state remedies. The disturbing net result of all this is because of an abandonment, some fairly bad decisions, in my view, by Mr. Arbenz. Once you got the case, what is a decidedly non-frivolous issue? Underlying issue is never going to get rid of it. Well, Your Honor, I would point the court to the state Supreme Court's decision denying the personal restraint petition. 6-3, right? I'm sorry, Your Honor? Not the personal restraint, but on the appeal, it was 6-3, wasn't it? It was 6-3, yes, Your Honor. The claim in the actual petition that was filed in federal court, there are three claims in the petition. One is that the state petition time should have told. Two is that there was ineffective assistance of collateral counsel, which is not a claim cognizable. And the third, the one claim that was cognizable was ineffective assistance of appellate counsel for not raising the claim as a 14th Amendment claim rather than as either a state law or a 5th Amendment claim. That claim, the state's position is not a valid claim. It would be denied on the merits. In fact, we addressed the merits in the district court in addition to addressing the procedural bars. I know, because why? I'm sorry, Your Honor? Just say no. Why? What is your argument about why? About why it's denied on the merits? Because the state court's adjudication of the ineffective assistance of counsel claim is an alternative decision that the state Supreme Court reached in dismissing the PRP and denying review on the PRP. And the state Supreme Court said that they hadn't shown prejudice required to show ineffective assistance of appellate counsel. So the claim would have failed even if it was addressed on the merits under 2254D because the state court decision was not unreasonable application of Supreme Court precedent. Unless the court has further questions, I see I'm out of time. Okay, thank you. Thank you, Your Honor. Mr. Arbenz. Thank you, Your Honor. And just very briefly, obviously, Your Honor, Judge Berzon, you pointed to the issues that exist here. Again, the strategy, the immediate visibility of the appropriate strategy in a case like this where you're having to recreate the entire case quickly, and there really is no timeframe that's set, right? I mean, it's all post-conviction. Nothing's going to be properly filed under the guidelines for timeliness. It's all improperly filed, although that was the only aspect which was improper was just the fact that the statute had been passed. And so now we're going to take these attempts and try to exhaust all reasonable state remedies and then come to the federal system as a last resort, which while certainly there are cases that talk about the option to preserve a federal option while exhausting state remedies, that exists. It's kind of almost not preferred, right? The preferred approach is to go through the state system. And so that was the direction that was chosen. Maybe it was wrong. One thing I always heard as an older lawyer instead of a younger lawyer is felt and suspenders. I mean, that is what most lawyers go after a fairly short time. Right. I understand, Your Honor, and that's fair. And obviously there are things that would be done differently now going forward. So, but again, you know, Mr. Berry, I think that issue does have merit. The issue of the 14th Amendment, the fact that his cold demeanor probably played a role in the jury's decision. And so this court does have an opportunity to at least let us try to address that. And so I would ask the court to do so. Thank you. Thank you very much. Thank you both. You're useful. Quite useful. Very good. Questions. Corrections. We're going to check.
judges: Berzon, Miller, Bress